

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RAYMOND MOORE,                         )
                                       )
    Plaintiff,                     )
                                       )  No. 07 C 0906
vs.                                    )  Magistrate Judge Sidney I. Schenkier
                                       )
VITAL PRODUCTS, INC.,                  )
                                       )
    Defendant.                     )

## MEMORANDUM OPINION AND ORDER[1]

On February 16, 2007, the plaintiff, Raymond Moore, filed a complaint alleging three counts

of discrimination in violation of Title VII, 42 U.S.C. §2000e-5(g) *et seq.*, and one state law claim

alleging a violation of the Illinois Workers Compensation Act, 820 ILCS 310/4(h). The defendant,

Vital Products, Inc., now seeks: (1) summary judgment on all claims, pursuant to Fed.R.Civ.P. 56

(doc. # 67); and (2) sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 (doc. # 61).

These motions have been fully briefed. In connection with the summary judgment motion,

plaintiff also has filed a motion to strike portions of defendant's statement of facts in support of

summary judgment (doc. # 80), and a motion to strike affidavits submitted by defendant in support

of summary judgment (doc. # 82). These motions to strike have now been briefed as well.

For the reasons that follow, we deny plaintiff's motions to strike; we grant defendant's

motion for summary judgment; and we deny defendant's motion for sanctions.

---

[1]On May 13, 2008, pursuant to the consent of all parties and 28 U.S.C. § 636(c), the Executive Committee
assigned this case to this Court for all purposes, including the entry of final judgment (doc. ## 52, 55).

We begin with a brief recitation of the controlling legal standards governing Rule 56 motions for summary judgment. Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, a fact must be able to affect the outcome under the substantive law governing the motion. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 596-99 (7th Cir. 2000).

To establish a genuine issue of material fact, the party opposing the motion for summary judgment must file a concise statement outlining the material facts that require denial of summary judgment, supported by citations to the evidentiary materials that support those denials (*e.g.*, affidavits, depositions, answers to interrogatories, admissions, etc.). Local Rules of United States District Court for the Northern District of Illinois ("LR 56.1"). Although the party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact, *Celotex*, 477 U.S. at 323, the nonmoving party cannot rely upon the pleadings alone, but must use the evidentiary tools outlined above to identify the material facts that show there is a genuine issue for trial. *Id.* at 324; *see also Insolia*, 216 F.3d at 598 ("Once the party moving for summary judgment uncovers a hole in the opponent's case, the nonmoving party that bears the ultimate burden at trial must show there is evidence creating a genuine issue of material fact").

In deciding a motion for summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party, and it must draw all reasonable inferences in the nonmovant's favor. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000);

*Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). The nonmoving party's burden is to identify facts that are both material and genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not affirmatively disprove the opponent's case; rather, the moving party can win summary judgment by establishing the lack of evidentiary support for the nonmoving party's position. *Id.* at 325. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. When a material fact or a set of facts yields competing but reasonable inferences, then there is a genuine issue that precludes summary judgment. On the other hand, if the evidence supporting a claimed genuine issue of material fact is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Facts asserted by a party that are merely conclusory or hearsay cannot serve as the basis for supporting or defeating an otherwise proper motion for summary judgment. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (noting that while the self-serving nature of statements in support or opposition to summary judgment is not in itself a problem, since "most affidavits submitted for these purposes are self-serving," affidavits that are not based on personal knowledge and that state only speculation "fail to thwart summary judgment"); *see also Anderson v. Diversified Systems, Inc.,* No. 1:06-cv-1076-DFH-TAB, 2008 WL 1882898 at 1 (S.D. Ind., April 24, 2008) (same). But, a court will generally deny summary judgment if the evidence asserted by the opposing party is not conclusory, is based on personal knowledge and meets other evidentiary requirements, so long as the evidence creates a genuine dispute of material fact. That is the case, even if the only evidence

3

submitted on a particular matter is the testimony of the opposing parties in affidavits or depositions. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *Payne,* 337 F.3d at 772.

Under our local rules, a party opposing summary judgment who fails to offer evidence to rebut a statement of undisputed material fact set forth by the movant does so at his peril: "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(C). Our appeals court has repeatedly upheld the application of these rules as appropriate and necessary tools of case management. *Koszola v. Bd. of Educ. of the City of Chi.,* 385 F.3d 1104, 1109 (7th Cir. 2004) ("We have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment"). The same principle holds true when defendant fails to contest any additional facts set forth by plaintiff. *See* LR 56.1(a)(3).

## II.

At the outset, we consider plaintiff's motions to strike. The motion to strike portions of defendant's Rule 56.1 Statement (doc. #80) is denied for two reasons.

*First,* plaintiff asserts that defendant violated Local Rule 56.1(b) by failing to word its fact statements in concise, single subject paragraphs, as specified by the local rule, and by failing to make reference to supporting material. We agree that defendant's Rule 56.1 Statement does not fully conform to the requirements of LR 56.1. But, the statements of fact that we find material do properly make reference to evidentiary support. We decline to find a violation of Local Rule 56.1 that is of sufficient magnitude to warrant striking properly supported material facts necessary to the resolution of this motion.

4

*Second,* plaintiff argues that defendant improperly characterizes certain facts. The Court rejects this argument as a basis to strike. In considering the summary judgment motion, we have focused on the basic fact in each proposed statement and determined its materiality, as well as the evidentiary support for it, without regard to defendant's characterization of that fact.

We now turn to plaintiff's motion to strike all or portions of the defendant's affidavits (doc. # 83). Plaintiff seeks to strike all affidavits on three grounds: (1) they attempt to add facts to defendant's summary judgment motion that "may be" in conflict with the depositions given by certain witnesses; (2) the affidavits are "self-serving" because they are made by defendant's employees; and (3) the affidavits are not based on personal knowledge (Pl.'s Mem. In Support, at 1-5). Plaintiff's motion to strike portions of specific affidavits (Bijarro, Budimir, Buzogany, Cocking, Davis, Matta, Mylander-Chase, Rogers, Suarez and Zeabart) is based on the same three grounds (Pl.'s Motion at 2-3).

At the outset, the motion to strike the affidavits of Bijarro, Budimir, Davis, Mylander-Chase, Rogers, Suarez and Zeabart is denied as moot since the Court does not rely on any facts asserted in these affidavits. As to the remaining affidavits, those of Messrs. Buzogany, Cocking and Matta, we find plaintiff's arguments to be without merit.

*First,* there is nothing untoward about defendant offering affidavits from individuals who previously were deposed. A party is permitted to offer depositions as well as affidavits and/or declarations on summary judgment; these may be offered together, in isolation, or in any combination that will show the absence (or presence) of a genuine issue of material fact. A party may wish to offer an affidavit from a previously-deposed witness to fill in gaps on points not addressed in the deposition. Plaintiff cannot complain that he was not permitted to cross-examine

5

statements because they appear by affidavit rather than in the deposition, since defendant is not under any obligation to elicit deposition testimony on topics plaintiff never explored when the affiant was deposed. To the extent that plaintiff deemed it necessary to depose certain affiants in order to file his opposition to this summary judgment motion, he could have filed a motion to do so pursuant to Federal Rule of Civil Procedure 56(f). But, plaintiff did not do so, and, thus, he has waived any such argument.

Of course, we agree that a party cannot seek (or resist) summary judgment with affidavits by persons that contradict their prior deposition testimony without explanation. *See Kalis v. Colgate Palmolive Co.,* No. 95 C 7673, 1999 WL 417463, *2 (N.D. June 18, 1999), *aff'd,* 231 F.3d 1049, 1056 (7th Cir. 2000). But, here, we have not relied on any affidavit statements that contradict the affiants' prior deposition testimony.[2] Thus, we are not persuaded that any conflict that exists is sufficient to strike the affidavits at issue.

*Second,* we reject the argument that the affidavits are "self-serving" simply because they are made by employees of the defendant and serve the interests of defendant. As the Seventh Circuit has commented, most affidavits submitted on summary judgment are, in that sense, self-serving. *Payne,* 337 F.3d at 772. Rule 56 does not require that affiants be independent from any party; it requires that affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

---

[2]Plaintiff points to the following statements of fact as those in conflict: (1) in Mr. Buzogany's deposition, he testified to limited involvement regarding driver training (Buzogany Dep. at pp. 20-21, Def.'s Tab 6), but in his affidavit he stated that he worked closely with drivers and trained them extensively (Buzogany Aff. ¶ 2, Def.'s Tab 5); and (2) Mr. Buzogany also testified in his deposition that he only gave plaintiff one verbal warning before suspending him on January 3, 2005 (Buzogany Dep., Pl.'s Ex. A, at pp. 49-52), but in his affidavit he said he warned plaintiff several times (Buzogany Aff. ¶ 12, Def.'s Tab 5). As will be seen from the recitation of material facts for which we find no genuine dispute, these matters are not material to the resolution of the motion for summary judgment. Thus, we disregard those two assertions from Mr. Buzogany's affidavit.

6

Fed.R.Civ.P. 56(e)(1). In other words, the affiant must have an adequate foundation to offer the statements he or she makes. We find that Messrs. Buzogany, Matta and Cocking had personal knowledge of the facts upon which we rely to resolve the present motion for summary judgment, because they are testifying about conduct in which they were allegedly involved. Plaintiff's motion to strike the affidavits at issue is therefore denied.

## III.

We now turn to the material and undisputed facts. Mr. Moore is an African-American male who was hired by Vital on August 16, 2004 (Defendant's Rule 56.1 Statement of Material Facts ("DSOF") ¶¶ 3, 5). Plaintiff worked briefly as a warehouseman before becoming a driver technician in September 2004 (*Id.* ¶ 5). A driver technician delivers durable medical equipment (such as hospital beds and oxygen tanks) to patients and prepares it for use (*Id.* ¶ 5).

The following people worked for defendant during all relevant times. Ricardo Matta was plaintiff's direct supervisor (*Id.* ¶ 9). Rick Cocking was a white male billing specialist whose office contained the copy machine plaintiff used to make delivery route copies each day (*Id.* ¶¶ 6-7). Mr. Cocking was never plaintiff's supervisor (*Id.* at ¶¶ 9, 13).[3] Mr. William Buzogany, a white male, is the President of Vital (*Id.* at ¶ 9). Ms. Katerina Foretova, a white female, is a bookkeeper and personnel clerk who assists Mr. Buzogany (*Id.* ¶ 9; Ex. 10 (Foretova Dep.) at 4).

During Mr. Moore's employment, drivers were required to make a copy of their finished route sheet upon completion each day (DSOF ¶ 6). Vital had two copiers and a fax/copier machine

---

[3] Plaintiff purports to dispute that Mr. Cocking was not his supervisor, but offers no evidence to support that denial (*see* Pl.'s Response to Defendant's Statement of Material Facts ("PSOF" ¶ 13). Plaintiff states only that he "has no knowledge" of whether Mr. Cocking was his supervisor (*Id.*). A plea of lack of knowledge is insufficient to create a genuine fact dispute on a motion for summary judgment. LR 56.1(b)(3)(A); *Neal v. Ingalls Mem'l Hosp.*, No. 01 C 3939, 2003 WL 260675, at * 1 n.3 (N.D.Ill. Feb. 5, 2003).

available for drivers to use to make those copies (DSOF ¶ 7). Only one copy machine was located in Mr. Cocking's office (DSOF ¶ 7), but plaintiff says he used that machine because it was the only copier that worked (Pl.'s Resp. to DSOF ¶ 7).

In his office, Mr. Cocking kept a "Boys will be Boys" calendar (Pls.' Rule 56.1 Statement of Additional Facts ("PSAF") ¶ 2). The parties agree that in the year 2005, the calendar depicted caricatures of men (DSOF ¶ 30). For example, in the August portion of the 2005 calendar, there is a caricature of men in bathing trunks carrying surf boards; the September portion of the 2005 calendar contains a caricature of two men kissing; the October portion of the 2005 calendar contains a caricature of a man holding a "merman"; and the November portion of the 2005 calendar contains a caricature of a group of men gathered around a table celebrating Thanksgiving dinner (*Id.* ¶ 30; Def.'s Ex. 25 (2005 calendar)).

Defendant suspended plaintiff on January 3, 2005 (DSOF ¶ 15). The parties do not disclose when Mr. Moore returned to work from the suspension, but it is undisputed that his last full day of work thereafter was on Wednesday, February 16, 2005, when he voluntarily stopped working for reasons he did not immediately share with defendant (DSOF ¶ 18). Significantly, plaintiff does not claim he ceased working on February 16 due to any gender or age discrimination. Nor has he offered any evidence of any acts of gender or race discrimination that allegedly occurred between his return from the January 2005 suspension and February 16, 2005. Rather, in deposition testimony, Mr. Moore now admits that he stopped working on February 16, 2005 as a result of a work-related injury (Def.'s Ex. 3 (Moore Dep.) at 347-48). He does not recall when he injured himself or whether he finished his assigned work before leaving on February 16 (Def.'s Ex.3 (Moore Dep.) at 347-348).

8

There is no genuine dispute that plaintiff failed to report to work without notifying defendant on February 17, 18 and 21 (Thursday, Friday and Monday), 2005 (DSOF ¶ 19 and Ex. 3 (Moore Dep.) at 332-334, 347-350). We recognize that plaintiff tries to dispute this fact in his Rule 56.1 Response (*See* PSOF ¶ 19). However, the only evidence plaintiff cites is his own deposition testimony, in which Mr. Moore testified on oath that he does not recall whether he notified defendant that he would not be reporting to work on February 17th, 18th, or 21 (Def.'s Ex. 3 (Moore Dep.) at 333, 348-50). Specifically, Mr. Moore testified that, "I can't recall when I called in or if I called in" (*Id.* at 348). Moreover, while Mr. Moore said it was "possible" that he asked someone to call in for him (*Id.* at 348-49), he could not recall if he actually did so (*Id.* at 349). And, he certainly offered no evidence that anyone, in fact, made a call to defendant to report the absence. Even taking all reasonable inferences in plaintiff's favor, this testimony is not sufficient to create a genuine dispute of fact on the issue of notice. Thus, we consider as undisputed defendant's assertion that plaintiff failed to call in his absences on February 17, 18, and 21.

As a result of plaintiff's failure to report to work or call in his absences between February 17 and 21, defendant treated Mr. Moore as having abandoned his job (DSOF ¶ 19). The undisputed evidence is that defendant did not terminate Mr. Moore at that time but, instead, considered him to be on inactive status (Def.'s Ex. 10 (Foretova Dep.) at 6). A person on inactive status can be called back to work if he or she offers a legitimate explanation for failing to show up for work or call in an absence (*Id.*). Indeed, plaintiff himself has repeatedly stated that he was not terminated and that he still is employed (albeit inactive) with defendant (Def.'s Ex. 3 (Moore Dep.) at 134, 143).[4]

---

[4]Plaintiff, nonetheless, asserts there is a genuine dispute as to whether he was terminated (PSOF ¶ 22; PSAF ¶ 11). To support that proposition, plaintiff cites to defendant's letter, dated June 4, 2006, inviting plaintiff to return to work, which plaintiff characterizes as an offer "to rehire" (PSOF ¶ 22, citing Pl.'s Ex. 4 (June 4 letter)). However, the

9

On February 21, 2005, Mr. Buzogany asked Ms. Foretova to send plaintiff a "COBRA" notice to tell him defendant was terminating his health insurance and to give him the opportunity to extend his health benefits by voluntary payment (Def.'s Ex. 6 (Buzogany Dep.) at 72-74, 76-77; Ex. 10 (Foretova Dep.) at 7, 10). Ms. Foretova sent that notice on February 21, 2005 (DSOF ¶ 23, Ex. 21). Plaintiff asserts that he never received this notice (Def.'s ¶ 23 and Ex. 3 (Moore Dep.) at 380-380), but he does not dispute that it was sent. Defendant did not receive notice that plaintiff was claiming a workplace injury until it received a notice from the Illinois Industrial Commission (Def.'s ¶ 19 and Ex. 10 (Foretova Dep.) at 6-7; Pl.'s Ex. R). Ms. Foretova received this notice on behalf of defendant; while she does not know the exact date on which she received it, she did recall it was after Mr. Moore had failed to report or call in for three days (Def.'s Ex. 10 (Foretova Dep.) at 9-11). That is consistent with the fact that the Workers' Compensation claim Mr. Moore filed with the Industrial Commission is dated February 28, 2005 (Def.'s Ex. 18).

On December 7, 2005, plaintiff filed a Charge of Discrimination ("Charge") against defendant with the Equal Employment Opportunity Commission (Pl.'s Ex. B, attachment). In his Charge, which his Complaint in this case adopts and incorporates, plaintiff did not allege that he had been discharged from his employment with defendant. Rather, plaintiff alleged that he was "currently on medical leave," and remained "an employee of the company" (*Id.* (Compl.) ¶¶ 20, 22).

---

actual text of the letter states that defendant understood that plaintiff had been medically released to work, and defendant had an available position that plaintiff could perform within his remaining physical restrictions (Pl.'s Ex. F). Mr. Moore declined to return, maintaining that he still was unable to work due to injuries he sustained while working for defendant (DSOF ¶ 24).

The offer to allow Mr. Moore to return to work is consistent with Ms. Foretova's testimony that persons on inactive status may be called back to work, and it does not create a genuine issue as to whether Mr. Moore was fired (Def.'s Ex. 10 (Fovetova Dep.) at 6-24). Indeed, that evidently is how Mr. Moore understands the letter as well. In his deposition, even after being shown this letter, Mr. Moore testified that he still considered himself employed with defendant (Def.'s Ex. 3 (Moore Dep.) at 134, 143).

10

We note that while plaintiff now says the June 4, 2006 letter "clarified" that defendant had terminated plaintiff (Pl.'s Resp. to Def.'s Mot. for Sanctions at 8), plaintiff never amended the EEOC Charge to assert that he was terminated by defendant. That was the case, even though the June 4, 2006 letter was written more than five months before the EEOC issued a right to sue letter to Mr. Moore on November 28, 2006 (*Id.* (Compl.) ¶ 19(c)).

## IV.

With those undisputed facts in mind, we now turn to the plaintiff's claims for relief. We begin with two threshold administrative standards applicable to Title VII cases that are relevant here.

Before a federal lawsuit can be filed, Title VII requires a plaintiff to file a charge of discrimination with the EEOC within 300 days of the complained of conduct by an employer. 42 U.S.C. § 2000e-5(e)(1). *See also Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008). In this case, plaintiff filed his EEOC Charge on December 7, 2005. Counting back 300 days from that date takes us to February 11, 2005. Thus, the statutory period for any of Mr. Moore's claims of discrimination that can be heard by this Court starts on February 11, 2005.

We point this out because both parties have devoted a substantial portion of their summary judgment submissions to a discussion of the alleged acts of racial animus and male on male sexual harassment or gender discrimination that Mr. Moore says he endured. Under well-settled law, any claim of gender or race discrimination must be based on conduct that allegedly occurred on or after February 11, 2005. Any claims based on conduct outside the statutory period are time-barred; thus, plaintiff may not seek a remedy for that alleged conduct. *Chaudhry*, 546 F.3d at 836.

In addition, any Title VII claims pled in Mr. Moore's Complaint must be like or related to the claims alleged in his EEOC Charge. The purpose of that requirement is is to give an employer

notice of a plaintiff's claims; to allow the EEOC to investigate those claims; and to enable the EEOC to facilitate the resolution of employment disputes without them becoming federal lawsuits. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996); *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir.), *cert. denied*, 513 U.S. 1001 (1994). A claim alleged in the complaint that is outside the scope of the EEOC Charge is subject to dismissal. *See, e.g., Miller v. American Airlines, Inc.*, 525 F.3d 520, 525-26 (7th Cir. 2008); *Cheek*, 97 F.3d at 202-03.

Mindful of these principles, we address Mr. Moore's three Title VII claims in Part A. We then separately consider his state law claim of retaliation in Part B.

## A.

In Count I, plaintiff alleges sex discrimination in violation of Title VII. Specifically, plaintiff alleges that defendant engaged in "male on male" gender discrimination by permitting its employees to sexually harass him and create a hostile work environment based on sex (Compl., ¶¶ 20-21). Plaintiff further alleges that this gender discrimination resulted in his termination on or about February 15, 2005 (Compl., ¶ 25).

In Count II, plaintiff alleges race discrimination in violation of Title VII. Here, plaintiff refers the Court to his EEOC Charge, in which plaintiff complained that he was subject to "daily" and "ongoing" and "continuous" racial comments made by his immediate supervisor, Mr. Matta, and also by Mr. Cocking, who was not his supervisor (Compl., Ex. A, Charge III. B-C, E-G). In his Complaint, plaintiff alleges that he was terminated because of his race (Compl., ¶ 29).

In Count III, plaintiff alleges retaliation in violation of Title VII (Compl., ¶ 33). The retaliation claim is based on allegations set forth in his EEOC Charge that describe alleged acts of gender and race discrimination and sexual harassment (*Id.* ¶¶ 31-34). In his Complaint (but not in

12

his EEOC Charge), plaintiff alleges he was terminated in retaliation for complaining about alleged discrimination and harassment (Compl. ¶ 34).

Title VII prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also forbids employer retaliation where an employee has opposed an unlawful employment practice, or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (internal quotation marks omitted). The anti-retaliation provision operates to "prohibit employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the Courts, or their employers." *Id.* at 732-733 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) and *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). "A plaintiff may prove intentional employment discrimination under Title VII by using either the 'direct method' or 'indirect method.'" *Rhodes v. Ill. Dep.'t of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Both methods require the plaintiff to show that he suffered a materially adverse employment action. *Id.*; *de la Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 685 (7th Cir. 2008).

Here, plaintiff seeks to prove his Title VII claims using the direct method of proof (Pl.'s Mem. at 7, 10). "A plaintiff who proceeds under the direct method of proof must adduce direct or circumstantial evidence that shows that her employer's decision to take an adverse employment action against her was motivated by a discriminatory purpose." *See de la Rama*, 541 F.3d at 685 n.3; *see also, Rhodes*, 359 F.3d at 504. To be actionable, the adverse action alleged must be "materially adverse," which means "more than a 'mere inconvenience or an alteration of job responsibilities.'"

13

*Oest v. Ill. Dep't. of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l, Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Thus, plaintiff's three Title VII claims require proof of an adverse employment action – on or after February 11, 2005 – for plaintiff to survive summary judgment. In this case, the adverse action plaintiff cites is that defendant allegedly terminated him on or about February 16, 2005. Termination assuredly is a materially adverse employment action. *Rhodes,* 359 F.3d at 504. However, plaintiff's claim that he was terminated fails to defeat summary judgment for two reasons.

*First*, the undisputed material facts show that plaintiff was not terminated. He failed to appear for work on three work days without calling in to give notice. Mr. Moore has not alleged, much less offered evidence, that he was constructively discharged because the alleged discrimination and harassment created conditions that were so intolerable that he had no choice but to leave. He admits he left work, and failed to return, due to an unrelated physical injury suffered at work. Moreover, the evidence discussed above establishes that, even despite failing to call in his absences for three consecutive work days, defendant did not fire Mr. Moore; rather, it placed him on inactive status. And, when he was invited to return, Mr. Moore declined not because of defendant's conduct, but because he deemed himself physically unable to work due to continuing effects of a prior injury. Without a triable issue on termination, plaintiff's Title VII claims based on an alleged termination fail.

*Second*, even if the summary judgment record created a triable issue as to whether Mr. Moore was fired, he would have to confront the fact that he failed to allege termination in his EEOC Charge. Mr. Moore's Complaint alleges that he was terminated on or about February 16, 2005, nearly 10 months before he filed his EEOC Charge. There was no reason for him to fail to include a

14

termination in his EEOC Charge when he originally filed it, or to amend the charge after receiving the June 4, 2006 letter that plaintiff now claims shows he was terminated. Nor can plaintiff claim that the termination claim is like or related to his underlying claims of discrimination and harassment. *See, e.g., Kind v. Gonzales*, No. 05 C 0793, 2006 WL 1519579, at *6 (N.D. Ill., May 30, 2006) (citing *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (termination claim is not like or related to claims of harassment, hostile workplace or retaliation). Plaintiff's failure to allege termination in the EEOC Charge places his termination claims outside the scope of the EEOC Charge and, thus, subject to summary judgment. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851-52 (7th Cir. 2008).

Finally, we note that while it is not altogether clear, plaintiff's claim in Counts I and II may be read to allege hostile workplace claims, apart from any termination. To the extent that plaintiff advances such a claim, it is time barred because he has offered insufficient evidence of alleged harassing or discriminating conduct occurring within the statute of limitations period: that is, on or after February 11, 2005.

Plaintiff offers no evidence to show specifically when the allegations of harassing and discriminatory activity occurred. In deposition testimony, plaintiff admits that he does not "recall exactly when" Mr. Cocking allegedly brushed up against him (Def.'s Ex. 3 (Moore Dep.), at 163); and, this conduct did not occur "every time" he went into Mr. Cocking's office, but only "on general but different occasions" (*Id.* at 165). Similarly, the comments and pictures plaintiff alleges to be harassing are also without a time-frame (*Id.* at 173-182). In fact, plaintiff admitted that he could not recall when he first noticed a picture of a naked male sitting on a toilet in Mr. Cocking's office (*Id.* at 181) (as he alleged in the EEOC Charge) or the calendars depicting what plaintiff describes as

homosexual activity (*Id.* at 182). This kind of vague testimony is insufficient to permit the inference that any actionable conduct sufficient to create a triable issue occurred during the short time between the commencement of the statutory period (February 11, 2005) and plaintiff's last day at work (February 16, 2005).[5]

## B.

With the dismissal of the Title VII claims which give us federal subject matter jurisdiction, we have the discretion – but not the obligation – to decline supplemental jurisdiction over plaintiff's state law retaliation claim. *See Wright v. Associated Ins. Companies, Inc.,* 29 F.3d 1244, 1251-52 (7th Cir. 1994) (when federal courts dismiss all federal claims before trial, "judicial economy, convenience, fairness and comity" may "point to federal decision of the state-law claims"); *see also Hansen v. Board of Trustees of Hamilton Southeastern School Corp.,* 551 F.3d 599, 2008 WL 5336904, *7 (7th Cir. Dec. 23, 2008). "If the district court, in deciding a federal claim, decides an issue dispositive of the pendent state claim, there is no use leaving the latter to the state court." *Wright,* 29 F.3d at 1251. That is the case here, for two reasons.

*First,* plaintiff concedes that, "[t]o recover damages for the tort of retaliatory discharge under the Workers' Compensation Act," he must prove: (1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged

---

[5]However, even if the alleged conduct had occurred within the statutory period, there is not enough evidence in this record to support a triable issue of hostile environment sexual harassment as it has been defined by the Seventh Circuit. *Rhodes,* 359 F.3d at 505-06. Hostile environment sexual harassment requires severe or pervasive conduct that unreasonably interferes with work performance. *Id.* There are no facts on this record to reasonably suggest that any conduct that might have occurred on February 11 (Friday), 14 (Monday), 15 (Tuesday), or 16 (Wednesday), 2005, was so severe or pervasive that it could have unreasonably interfered with plaintiff's work performance. By plaintiff's own admission he stopped going to work because his back hurt and he had limited range of movement (Def.'s Ex. 3, Moore Dep. at 350). Mr. Moore did not stop going to work because the work environment was so hostile that he could not bear to work there any longer.

and the discharge was causally related to his filing a claim under the Workers' Compensation Act (Pl.'s Mem. at 14 (citing *Gonzalez v. Presten Engineering Corp.*, 551 N.E.2d 793, 796 (Ill. 4th Dist. 1990)). Because proof of discharge is an essential element of the state law claim and the undisputed facts show plaintiff was not discharged, Count IV fails for this reason alone.

*Second*, in order to establish his state law claim of retaliation, plaintiff would have to show that defendant knew he was claiming or exercising a right under the Worker's Compensation Act at the time of any alleged retaliatory act. Here, the undisputed facts show that the defendant was not made aware that plaintiff was claiming a right to workers' compensation until the notice, dated February 28, 2005, was received. The undisputed facts show that defendant made the decision to place him on inactive status and to terminate plaintiff's health benefits on or around February 21, 2005 – before defendant knew of plaintiff's Worker's Compensation claim with the Industrial Commission. Defendant's act of terminating plaintiff's benefits cannot be said to be causally related to his filing a claim under the Workers' Compensation Act and, thus, it cannot support his state law claim of retaliation. Accordingly, we exercise our discretion to retain jurisdiction over plaintiff's state law claim, and we grant defendant summary judgment on that claim.

## V.

We now turn to defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. Defendant asserts that the Complaint was sanctionable when plaintiff filed it, because: (1) plaintiff alleged Title VII and state law claims based on the proposition that he was terminated from his employment when he knew that was not true; (2) there never was any factual basis for an award of damages; (3) plaintiff knew that his claims of race and gender discrimination lacked any factual underpinning; and (4) plaintiff's attorney filed plaintiff's EEOC Charge and his Complaint, so

17

(according to defendant) he knew that the claims were baseless and should be personally sanctioned as well. We address the defendant's arguments first under Rule 11 and then under Section 1927.

## Rule 11 Sanctions

"Rule 11 sanction[s] serve[] an important purpose and [are] a tool that must be used with utmost care and caution." *Stotler & Co. v. Able,* 870 F.2d 1158, 1167 (7th Cir. 1989) (affirming denial of a motion for sanctions under Rule 11). Care is required because the "[t]oo frequent imposition of sanctions under . . . Rule . . .11 risks chilling zealous and creative advocacy as well as potentially meritorious claims that circumstances make difficult to prove." *Tillman v. New Line Cinema Corp.,* No. 05 C 0910, 2008 WL 5427744, *6 (N.D. Ill., December 31, 2008).

Rule 11 states in relevant part, that by presenting to the Court a pleading, written motion or other papers, "an attorney certifies, to his best "knowledge" information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)   the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed.R.Civ.P. 11(b)(1)-(3). A district court employs an objective standard in assessing the reasonableness of the pre-suit investigation. *Chambers v. American Trans Air, Inc.,* 17 F.3d 1006-07 (7th Cir. 1994). A pleading cannot be based on mere wishful thinking. *See Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir. 1986) ("an advocate must represent his client within the existing structure

of the law, and not some imagined version of it"). But, "the reasonableness of a plaintiff's pre-filing inquiry must be judged by the totality of the circumstances viewed *ex ante,* not *ex post.* Hindsight may well reveal that additional research or investigation would have avoided litigation, and yet the rule is not violated." *Foster v. Michelin Tire Corp.,* 108 F.R.D. 412, 416 (C.D. Ill. 1985). Rule 11 is violated when it is clear to the court that there were no facts supporting the claim when it was filed and/or that the law did not allow recovery based on the facts alleged. *Id.* at 415 (where no inquiry made into facts or inquiry reveals no information supporting claim then inquiry is not reasonable).

**A.**

We begin analysis of defendant's claim for sanctions with defendant's argument that plaintiff violated Rule 11 when he filed his Complaint alleging that he was terminated by defendant on or about February 15, 2005 (Def.'s Sanctions Reply Mem. at 1-2). Specifically, defendant argues that plaintiff (and his counsel) knew or should have known that any federal or state law termination claims were doomed from the outset because:

1. On or about February 16, 2005, plaintiff voluntarily stopped working for defendant due to an alleged injury;

2. On or about February 21, 2005, defendant terminated plaintiff's health insurance benefits;

3. On or about February 28, 2005, plaintiff sent defendant a disability certificate from the IWCA;

4. On or about September 2, 2005, plaintiff's counsel sent a letter to defendant stating that plaintiff was on medical leave and requested information on COBRA, as well as the termination of plaintiff's medical benefits (not the termination of his employment);

5.  On or about September 12, 2005, defendant responded to plaintiff's counsel concerning COBRA benefits (saying it sent the notice to plaintiff) and did not discuss termination of employment;

6.  On or about December 7, 2005, plaintiff's counsel filed an EEOC Charge which did not allege that plaintiff's employment had been terminated, but instead alleged that plaintiff was still employed by defendant but was on medical leave;

7.  On or about June 5, 2006, defendant drafted a letter addressed to Mr. Moore, dated June 4, 2006, offering Mr. Moore "a position . . . within [plaintiff's] work restrictions," based on information that plaintiff's workers compensation insurance carrier had released plaintiff to work within certain restrictions; and

8.  On February 15, 2007, plaintiff files the complaint in this case alleged theories of unlawful termination under Title VII.

(*Id.*). Defendant appears to argue that plaintiff's termination claims violated all three subparts of Rule 11(b), so we will address each subpart separately.

**1.**

Rule 11(b)(3) states that an attorney's signature on a complaint is a certification that "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," . . . "the factual contentions have evidentiary support." We consider defendant's claim that sanctions should be awarded under Rule 11(b)(3) on the ground that plaintiff's termination claims lacked that evidentiary support when the Complaint was filed. Although we find that the evidentiary support to believe that plaintiff had been terminated was scant at best, we conclude that there was – barely – enough to avoid sanctions.

There is no genuine dispute that plaintiff was not fired on February 16, 2005, the last day that he reported to work with defendant. Rather, he left work that day and did not return thereafter, as a result of a workplace injury he claims to have suffered. As we have explained above, the undisputed evidence is that Mr. Moore did not call in his absences for the following three work days. As a result, defendant terminated his insurance coverage and sent him a COBRA notice; but, as plaintiff concedes (Pl.'s Sanctions Resp. at 7), "[j]ust because someone gets a COBRA notice doesn't mean they are terminated." Plaintiff has pointed to no written or oral statement defendant made in which it expressly stated that Mr. Moore had been terminated.

Nor are we persuaded that defendant's other pre-suit actions or statements cited by plaintiff provided an evidentiary basis for plaintiff to assert that he had been fired. We reject plaintiff's argument that defendant's response to plaintiff's counsel's September 2, 2005 letter created such a basis. While plaintiff argues that the response did not answer the "central question" of whether plaintiff was terminated (Pl.'s Sanctions Resp. at 7), that is not surprising inasmuch as plaintiff's letter did not pose that question. We likewise reject plaintiff's argument that defendant's letter of June 4, 2006, offering plaintiff an opportunity to return to work, suggests that he had been fired in February 2005 (Id. at 8). The letter did not state that plaintiff had been previously terminated. Rather, defendant stated that it understood that Mr. Moore had been released to work with restrictions, and that defendant had work available that he could perform within those restrictions: all of which is consistent with plaintiff having been placed on medical leave. The fact that the letter gave plaintiff a "start" date did not imply that he had been terminated; rather, it was a natural way to put the offer in light of plaintiff's decision to "stop" working as of February 16, 2005. We also disagree with plaintiff's argument that defendant's lack of contact with plaintiff after February 16,

2005, suggests a termination (*Id.* at 7-8). The lack of contact was not surprising since it was plaintiff who stopped reporting to work after February 16, 2005, who never sought to return, and who claimed to be physically unable to return.

Finally, we note that none of the foregoing statements or actions that plaintiff cites caused plaintiff to allege in his original EEOC Charge that he had been fired. He did not allege a termination in his original charge, filed on December 7, 2005, after he had received the response to the September 2, 2005 letter; and, at no time before the right to sue letter was issued on November 28, 2006, did plaintiff amend the charge to allege a termination, even after defendant's letter of June 4, 2006, and a sustained period of lack of contact between plaintiff and defendant.

That said, we also must acknowledge that defendant has pointed to no document that it supplied to plaintiff prior to suit that unequivocally informed plaintiff of his employment status as of February 21, 2005, once he had failed to report to work or to call in absences for three consecutive work days. Even now, among all of the documents submitted by defendant in connection with the summary judgment and sanctions motions, defendant has not pointed to any contemporaneous personnel record prepared in February 2005 showing defendant's employment status. In litigation, the absence of key evidence often can be as telling as its presence. Moreover, while a COBRA notice is not always associated with a termination, it sometimes is part and parcel of a termination.

In our view, these considerations gave plaintiff some, albeit an exceedingly thin, basis to suspect a termination. The discovery that has been conducted in this case, including the depositions of defendant's employee, supplied evidence that was missing at the time of suit and that confirmed that Mr. Moore was not terminated. But, that evidence was developed only through discovery; it was not known or available to plaintiff at the time he filed suit. In the absence of evidence that plaintiff

22

received a clear statement that he had not been terminated and given that a COBRA notice is sometimes (although not always) associated with a termination, we decline to find that plaintiff violated Rule 11(b)(3) by including termination claims in his Complaint.

In so finding, we are mindful of the timing of defendant's sanctions motion. Defendant did not send plaintiff the letter that is a prerequisite to a Rule 11 motion until June 17, 2008, about two weeks after discovery closed on June 4, 2008 (Def.'s Sanctions Mem., Ex. 7). If, as defendant now claims, the termination claims were sanctionable when the suit was filed on February 15, 2007, then there was no reason to wait for more than 15 months to raise the specter of Rule 11. The timing of defendant's letter suggests that it was only after discovery was completed, and the deposition testimony confirmed that plaintiff was not terminated, that the lack of merit in the termination claims was established.

It is not uncommon for a party to make an assertion that, after discovery, proves to be a dead end; but, that does not mean the assertion was sanctionable when originally made. "Rule 11 does not allow an award of sanctions just because things went poorly after an investigation that was adequate in light of what was known (and how much time was available) before the paper was filed." *Rose v. Franchetti*, 979 F.2d 81, 87 (7th Cir. 1992) (quoting *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (*en banc*)); *see also* Comments to 1993 Amendments to Rule 11 ("That summary judgment is rendered against a party does not necessarily mean, . . . that it had no evidentiary support for its position"). The fact that discovery here drove the final nail into the coffin of plaintiff's termination claim does not mean that claim was factually frivolous when made.

23

We next consider whether plaintiff violated Rule 11(b)(2) by asserting a termination theory as the basis for his Title VII claims. As relevant here, Rule 11(b)(2) states that the lawyer's signature on the complaint certifies that the claims are "warranted by existing law." Again, while we find this to be a close question, we find no violation of Rule 11(b)(2).

As we have explained above, it is well settled that an EEOC charge establishes the parameters for Title VII claims that a plaintiff then may file in federal court. The Title VII claims alleged in federal court must be within the scope of the claims raised in the EEOC charge. *E.g.*, *Cheek*, 97 F.3d at 202-03. Title VII claims asserted in a complaint must be the same as, or like or related to, the charges presented to the EEOC. *Id.* Title VII claims that exceed the scope of an EEOC charge are subject to dismissal. *Id.*

Here, plaintiff presented to the EEOC detailed allegations that defendant subjected him to harassment and a hostile work place based on gender and race and then retaliated against him when he complained about it. However, he did not allege that he was terminated, much less that he was terminated for any impermissible reason: to the contrary, in his EEOC Charge, plaintiff alleged that he was on medical leave (Def.'s Sanctions Mot., Ex. 1). Normally, a termination claim is not like or related to claims of harassment, hostile workplace or retaliation. *See, e.g., Kind*, 2006 WL 1519579, at *6. That is true here, given that plaintiff claims his termination occurred as of mid-February 2005. There also was no reason for him to fail to include that claim in the EEOC Charge when he filed it in December 2005 or to amend that Charge to include a termination claim at some point before he received the right to sue letter in December 2006. Nor can plaintiff plead that he was untutored about the need to include a termination claim in the EEOC Charge if he wished to pursue

one. He was represented by counsel (the same counsel who has represented him in this case) throughout the EEOC phase.

Thus, the case could be made that plaintiff's Title VII termination claims were legally dead in the water when filed because they were not warranted by existing law, as required by Rule 11(b)(2).[6] However, for two reasons, we conclude that these termination claims did not violate Rule 11(b)(2).

*First*, the scope of the charge is an affirmative defense that must be asserted by the defendant in the answer to plaintiff's complaint. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 707 (7th Cir. 2000). The fact that a claim is potentially subject to an affirmative defense does not mean that the merits of the underlying claim were not "warranted by law." A plaintiff does not violate Rule 11(b)(2) by failing to anticipate an affirmative defense that a defendant may or may not assert. *See generally U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (". . . complaints need not anticipate and attempt to plead around defenses). *Second*, once again we note that defendant did not assert this alleged violation of Rule 11 promptly when suit was filed even though, in the answer that it filed on November 28, 2006, defendant alleged as an affirmative defense that plaintiff's claims exceeded the scope of his EEOC Charge. The fact that this Rule 11 issue was raised only after the completion of discovery raises a question as to whether the termination claim violated Rule 11(b)(2) when filed. For these reasons, we find that plaintiff did not violate Rule 11(b)(2) by asserting Title VII termination claims in his Complaint.

---

[6] We note that the same cannot be said about plaintiff's state law retaliatory discharge claim. Asserting a termination claim in an EEOC charge is not a prerequisite for asserting a supplemental state law claim based on a termination of employment. Thus, plaintiff's state law retaliatory discharge claim did not violate Rule 11(b)(2).

Finally, we consider whether plaintiff violated Rule 11(b)(1) by alleging termination claims in his complaint. Rule 11(b)(1) states that sanctions will be awarded if a court determines that a pleading statement made to the Court has been presented for an improper purpose, such as harassment, delay or to increase the costs of litigation.

Since plaintiff's termination claims did not violate Rule 11(b)(2) or 11(b)(3), defendant cannot claim a violation of Rule 11(b)(1) on the ground that the termination claims must have been pressed for an improper purpose because they were legally or factually baseless when filed. Moreover, based on our familiarity with the discovery in this case, we see no evidence that the inclusion of the termination claims materially delayed the progress of the litigation or increased its cost. Defendant has failed to identify depositions or other discovery that could have been avoided if plaintiff had not pursued the termination claims. Nor has defendant made the case that plaintiff asserted the termination claims merely to harass defendant. We therefore find that plaintiff did not violate Rule 11(b)(1) by asserting termination claims when he filed the Complaint.

## B.

Defendant asks the Court to impose Rule 11 sanctions on plaintiff as a result of his claims for monetary relief. Defendant argues that plaintiff's requests for back pay and front pay are sanctionable because they are premised on the claim that plaintiff was terminated, which defendant argues was itself sanctionable. In view of our ruling above that the termination claims did not violate Rule 11, we reject defendant's argument that plaintiff violated Rule 11 by seeking back pay and front pay on those claims.

Defendant also argues that plaintiff violated Rule 11 by seeking damages for emotional distress he allegedly suffered as a result of defendant's alleged conduct. Defendant argues that the discriminating and harassing conduct plaintiff alleges and the emotional distress he claims to have suffered are identical to what plaintiff asserted in a separate EEOC charge against his previous employer, Patients First Pulmonary Solutions ("PFPS"). Plaintiff left his employment at PFPS in early 2004; filed the EEOC charge against PFPS in December 2004; and settled the claim against PFPS in August 2005, about one and one-half years before he filed this suit. Thus, argues defendant, plaintiff cannot "expect to receive an additional payment from Vital Products" based on the same claims he made against PFPS and settled (Def.'s Sanctions Mem. at 5).

The premise of defendant's argument is that if plaintiff suffered emotional distress because of what allegedly occurred at PFPS, then he could suffer no additional or enhanced emotional distress if he later experienced similar (or the same) conduct while employed with defendant. That is a false premise. A person may experience emotional distress as a result of many factors or influences. Emotional distress caused by one event may be exacerbated by a later event. Pinpointing the sources of a person's emotional distress and the extent to which each source may have contributed to it is, to be sure, a difficult task. But it is quintessentially a question of fact and not of law.

Thus, the fact that plaintiff settled his claims for emotional distress that he claims resulted from discriminatory and harassing conduct he suffered at PFPS did not foreclose plaintiff from claiming that later conduct by defendant also caused him emotional distress. Had this case gone to trial, defendant would have been free to argue to the jury that if plaintiff suffered from emotional distress, then it stemmed from other events in his life (such as, what he claimed occurred at PFPS)

and not because of what defendant allegedly did. But, defendant would not have been entitled to a pretrial ruling that, as a matter of law, plaintiff's claimed emotional distress stemmed from certain sources and not others. Plaintiff did not violate Rule 11 by seeking emotional distress damages in this case after settling his earlier claims for emotional distress against PFPS.

In aid of its argument, defendant emphasizes the similarities between the PFPS charge and the conduct plaintiff ascribed to plaintiff in this case (Def.'s Sanctions Reply at 12). Defendant does not expressly say so, but we surmise that what defendant intends to convey with this point is that plaintiff's claims in this case are so similar to those in the PFPS charge that we should conclude plaintiff's claims here are merely copied from his charge against PFPS and are false. While plaintiff points out certain differences (Pl.'s Sanctions Sur-Reply at 3), those differences tend to be minor. Morever, plaintiff's efforts to explain away the similarities (*id.* at 3-4) do not completely dispel the suspicion that the high degree of similarity arouses.

All of this may have affected plaintiff's credibility had the case gone to trial and had this evidence been presented to a jury. But, similarities and suspicions are not the kind of allegations sufficient to support sanctions under Rule 11. To the extent defendant seeks to support its sanctions claim by asking the Court to find that the harassing and discriminatory conduct plaintiff alleged here was fabricated, based on the similarities to the earlier claim against PFPS, we decline to do so.

Finally, in its reply, defendant levels a number of additional criticisms against plaintiff in connection with the damages claim: (1) that plaintiff did not disclose the PFPS charge and settlement in his interrogatory responses when he should have done so; (2) that his deposition testimony did not substantiate his claim of "loss of life enjoyment"; and (3) that plaintiff failed to disclose during his deposition that he had a claim against the Chicago Transit Authority for lost wages and loss of

life enjoyment as the result of a bus accident (Def.'s Sanctions Reply at 7-8). While we could ignore these criticisms because they were first raised in a reply, we have allowed plaintiff to file a sur-reply to address them and thus no prejudice to plaintiff will result from our consideration of them.

At the threshold, we find that Rule 11 does not apply to these criticisms, because the statements and omissions that defendant criticizes were in interrogatory responses and deposition testimony that plaintiff did not "present to the court," as the rule requires. See Fed.R.Civ.P. 11(b). That said, even if Rule 11 applied, we would not find a violation here.

As for the interrogatory answer, we are not satisfied by plaintiff's explanation of his failure to disclose the PFPS charge in the first place, since the confidentiality provision in the PFPS settlement allowed for disclosure to attorneys. We do not condone his withholding of the PFPS information when answering the interrogatory. However, plaintiff acknowledged the PFPS charge when asked about it in his deposition. That obviated the need for plaintiff to supplement his interrogatory response to provide that information. See Fed.R.Civ.P. 26(e)(1) (the requirement to supplement discovery responses to address incomplete or incorrect responses applies only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). And, by acknowledging the PFPS matter in his deposition testimony, plaintiff effectively corrected his interrogatory answer and thus eliminated the basis for sanctions under Rule 11 (assuming the rule applied to interrogatory answers).

The remaining criticisms are also unavailing. We are satisfied that plaintiff was not asked a question at his deposition that required him to disclose the CTA suit. And, the fact that plaintiff's deposition testimony may not have fully supported the extent of compensatory damages he claimed does not, in our view, warrant imposition of Rule 11 sanctions.

## C.

Defendant's third argument for sanctions is that the plaintiff's claims were frivolous from the start, because none of them have any factual underpinning. Defendant claims that the frivolous nature of plaintiff's claims is clear because he "could not substantiate the claims made in his Complaint and Charge of Discrimination" when "placed under oath" (Def.'s Sanctions Mem. at 5). Defendant argues that plaintiff's deposition testimony shows that he could not substantiate all of his allegations with specific details about when, where and sometimes even whether the alleged conduct occurred (*Id.*). Defendant also points out that plaintiff could not identify any current or former employee of the defendant who could corroborate the allegations plaintiff made in his EEOC Charge (*Id.*). Finally, defendant argues that the allegations made against its company are too similar to those made against his former employer PFPS to be credible; and, thus, the lack of supporting evidence for them is not surprising (*Id.* at 7).

Defendant's arguments about frivolousness are based on the notion that Rule 11(b)(3) was violated when plaintiff's deposition testimony and other evidence did not corroborate his allegations in the Complaint. The term "frivolous" in a legal sense means: "of little weight or importance" or a pleading that is "clearly insufficient on its face." *See* Black's Law Dictionary 601 (5th Ed. 1979); *see also Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (an "unsubstantial" claim for purposes of federal jurisdiction is one "so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion" (internal quotation marks and citations omitted)). Based on our review of the evidence, we disagree that the claims of harassing and discriminating conduct were frivolous. Our review of the summary judgment record satisfies us that there was some evidence offered by plaintiff to support his claims

30

that improper conduct occurred.[7] In granting summary judgment, we had no need to consider whether plaintiff's evidence of this conduct was sufficient to create a triable issue, since his claims were defeated for other reasons. Moreover, the Court need not decide the strength of plaintiff's evidence of wrongful conduct. It is enough that his allegations of that conduct have sufficient support that Rule 11 sanctions are not warranted.

## D.

Finally, we need address only briefly defendant's argument that sanctions are warranted under Rule 11 against plaintiff's attorney -- as well as against plaintiff himself -- because plaintiff's attorney must have known that the claims were "baseless" since he represented plaintiff both at the time the EEOC Charge and Complaint were filed (Def.'s Sanctions Mem. at 9-10). Rule 11 sanctions are not warranted against plaintiff on the ground that the complaint was baseless when filed; likewise, Rule 11 sanctions against plaintiff's attorney are not warranted.

## 28 U.S.C. § 1927

Defendant also seeks sanctions under 28 U.S.C. § 1927. Under that statute, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." Sanctions are available under Section 1927 when "a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, [then] the

---

[7]In addition to his testimony about certain conduct, it is undisputed, for example, that there was a "Boys Will Be Boys" Calendar in Mr. Cocking's office containing pictures that might be considered sexually suggestive, as well as the picture on Mr. Cocking's desk of a naked man sitting on a toilet with his hand positioned over his crotch. Moreover, Mr. Cocking admitted the existence of the calendar and pictures, as well as ownership (although not the location) of various sexual devices (a plastic penis and a sexual lubricant) that plaintiff alleged he saw in Mr. Cocking's office (*Id.* at 11-12).

31

conduct is objectively unreasonable and vexatious." *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (internal quotation marks and citation omitted); *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1988). Unlike Rule 11, sanctions under Section 1927 are available only against an attorney not the client. *Id.*

In assessing whether sanctions should be awarded under Section 1927, a court must proceed cautiously.

> Section 1927 clearly is punitive and thus must be construed strictly. A court may impose section 1927 fees only to sanction needless delay by counsel. The purpose of section 1927 is to penalize attorneys who engage in dilatory conduct. To be liable under section 1927, counsel must have engaged in "serious and studied disregard for the orderly process of justice."

*Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir. 1984) (quoting *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.), *cert. denied*, 395 U.S. 908 (1969)). Sanctions under Section 1927 cannot be awarded simply because a claim is found meritless; the claim must be without a plausible legal or factual basis and lacking in justification. *Id.* The mental state of the attorney need not be one of malice, but "the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis." *Id.* In determining whether an attorney acted intentionally, a court can rely on direct evidence of an attorney's subjective knowledge or on a total lack of factual or legal basis for suit. *Id.* A court may also look to extrinsic or intrinsic evidence.

## A.

Defendant's lead argument for sanctions under Section 1927 is that plaintiff's counsel asserted termination claims that he knew (or should have known) were factually and legally baseless when he filed the complaint. For the reasons stated above in rejecting the arguments that plaintiff

32

violated Rule 11 by including the termination claims in the complaint, we conclude that defendant has not shown that the termination claims were so utterly bereft of any basis at the outset to warrant a finding that plaintiff's counsel violated Section 1927.

We also note that defendant has offered virtually no evidence as to how the inclusion of the termination claims multiplied the pleadings: or, put another way, how and to what extent this increased the costs of litigation. A major portion of the discovery was devoted to the harassment and hostile workplace claims based on race and gender. Defendant has not identified what depositions or other discovery were pursued that would have been unnecessary absent a termination claim, or the extent to which any such additional discovery increased the cost of litigation. On this record, we do not find that plaintiff's counsel violated Section 1927 by asserting the termination claims.

**B.**

Under Section 1927, defendant's argument regarding the lack of evidentiary support for the damages claims fares no better than it did under Rule 11. We do not see how plaintiff's claims for monetary relief unreasonably or vexatiously multiplied the proceedings and thereby increased costs; and, defendant does not provide any assistance in explaining how they did so. Indeed, we would expect the discovery of lost wages to be quite limited, since plaintiff has indicated that the injury that caused him to cease working in February 2005 has continued to hinder his ability to work. As for emotional distress damages, those claims would have been in the case with or without a termination claim.

We sympathize with defendant on one point as to the damages claims: plaintiff's failure to disclose the PFPS charge and settlement. As we have explained above, we did not sanction plaintiff

33

under Rule 11 for that failure because he corrected it at his deposition – albeit only after defendant obtained the information from PFPS and confronted plaintiff with it. Perhaps that conduct by plaintiff caused defendant some additional cost in having to get the information from PFPS. If so, we expect it was minimal; if not, Section 1927 does not provide a basis to sanction the client, and we have no reason to question the statement of plaintiff's counsel that he did know of the PFPS charge. Thus, we do not impose sanctions under Section 1927 for the incorrect interrogatory answer.

C.

Sanctions under Section 1927 are also not warranted based on defendant's argument that the claims asserted in the Complaint were frivolous. As we have explained, the allegations of discriminating and harassing conduct had some evidentiary support and, thus, were not frivolous. Plaintiff's counsel did not engage in unreasonable or vexatious conduct by alleging and pursing these matters.

<strong>CONCLUSION</strong>

The Court directs the Clerk of the Court to enter summary judgment in defendant's favor and grant defendant's motion (doc. # 67). Plaintiff's motions to strike (doc. ## 80 and 83) are denied. The defendant's motion for sanctions (doc. # 61) is denied. The case is terminated.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 3, 2009**